Judge Buckner,
delivered the opinion of the Court.
On a note, bearing date the 25th day •of December, 1823, by James Turpin, to his father, Hezekiah Turpin, for 373 dollars, payable one day after date; the latter sued and recovered judgment. To be relieved against it, James Turpin filed his bill in chancery, in August 1828, alleging that the note on which the judgment bad been rendered, was drawn by mistake for dollars, when it should have been made payable in notes on the bank of the Commonwealth; and that his father was endeavoring to coorce payment of the judgment, in notes of that bank, although they had greatly appreciated, since the note sued on became due; which he charges to be an usurious exaction.
The defendant answered the bill denying the ■equity relied on.
By an amended bill, the complainant alleges, that his maternal grand father, Francis Cheatham, published his last will and testament in 1785, in the state of Virginia; which, after the death of said Francis, was duly admitted to record in that state, during the year aforesaid; by which he made the *34 following devise to Jane Turpin, (mother of com - plainant.) “I leave to my daugh:er, Jane Turpin, during her natural life, three negree- following, to-wit: Jeffrey and Lydia, and their irxrease, with their former increase; and whatever else I have given her; and, at her death, to be equally divided among her children;” that his mother had died in November 1823, leaving, besides himself, the following children: William, Daniel, Thomas, and Frances. lie alleges, that previous to the death of his mother, Hczckiah Turpin sold the aforesaid slaves with their increase; but that he had not been enabled to ascertain where they were, and that he had also sold some other slaves, embraced by the expression, “and whatever else I have given her;” in the bills of sales, for which last, he, with his brothers and sister, had joined his lather, upon his promise to make to them a proper compensation; that his father had accordingly sold the whole of his property, shortly after the death of his (complainant’s) mother, except such of his slaves as had not been sold, which he had divided amongst his children, including complainant; and proposed to advance to each child, an equal portion of the money arising from the sale, reserving to himself, for his support, interest on the sums advanced. To which proposition he, complainant, acceded. Whereupon his father made the proposed advancement to him, in notes on the bank of the Commonwealth, then .greatly depreciated, which he accepted as a loan, and executed his note for the amount; that he annually paid the interest for several years, renewing his note, until 1826; when he executed that on which the judgment had been recovered, it being in consideration of the loan aforesaid; and for $26 in Commonwealth’s bank notes, due by him for property purchased at the sale aforesaid.
He insists, as in his original bill, that to compel him to pay more than the value of the bank notes at the time they were advanced, (which he says was in 1823,) with interest thereon, would be an exaction of usury. He makes his brothers and sister defendants, and prays that his father be compelled to state how many slaves lie had received, under the will of Francis Cheatham, and at what price he had sold *35 them; that he be held responsible to him and his brothers and sister, for the respective portions thereof, to which each was entitled; and that a decree be rendered in his favor, for such sum as might be due to him, after deducting the amount justly due on. the judgment.
The brothers and sister answered, stating their ignorance of the claim set up, as growing out of the will of their grandfather; and expressing their willingness, that their father should dispose of his property, as he thought proper.
Hezekiah answered also, denying the claim foundr ed on Cheatham's will; insisting that the slaves mentioned in the bill, as having been devised to him, by that will, had been given to his deceased wife, by Cheatham, her father, as far back as 1773. He admits, however, that he had sold them for $,1450; and that under a residuary clause in Cheatham’s will, directing the whole of his property not specially devised,, to be divided equally amongst all his children, he had obtained three slaves, one of whom was the mother and grandmother of all the slaves which he owned, at the death of his wife, and which he had not given, but lent to his children.
As to the manner in which the note sued on was executed, and the consideration on which it is founded, he refers to the statements of his answer to the original bill, in which be says, that the sale of his property was made “for dollars;” and that the. notes were drawn accordingly, with a condition, that they might be discharged, by the payment of Commonwealth’s paper; that a man by the name of iVlarksberry, bought apart of it, who, by his, defendant’s directions, paid a part of the amount due for his purchases to the complainant, in Commonwealth’s bank paper; which, with the sum due by complainant for property, which he purchased at the sale, constituted the consideration on which the note was founded, on which he had recovered the judgment enjoined. He says that the complainant was present when this note was drawn; directed how it should be written, and executed it, with a full knowledge of its contents, and with a knowledge “that he was on the same footing with other purchasers.” He *36 moreover insists, that at the time he obtained judgment, he agreed to accept paper of the bank of' the Commonwealth, in discharge of it, which the defendant agreed to pay; and upon that agreement,, permitted the judgment to be entered.
Upon a final hearing of the cause, the circuit court dismissed both bills, and dissolved the injunction which had- been obtained with costs.
From- the decree the complainant has appealed.
In the original- bill, the two grounds relied on, arc usury and mistake. Considering the proof in the cause, as well as the allegations of the appellant’s bill, we are of opinion, that he was not entitled to relief upon either ground. A witness who was present at the execution of the note, on which the judgment was rendered, says that he wrote it according to the-directions of both parties, and read it to them. There is no circnmstance proved, from which it can reasonably be inferred, that the appellant did not understand the manner in which the note was drawn, when he executed it; and it is not pretended tiiat any fraud was practised in procuring, it. There is no doubt that the consideration on which it was founded, was a debt due in notes, on the bank of the Commonwealth; and notes on that bank advanced to him by the appellee. From the proof it is-very probable, that the appellee did not intend, at the time, to coerce payment of any part of the principal, although he reserved to himself the right of doing so, if he chose; and that he was induced to depart from his original determination on that subject, by what he considered as undutiful conduct towards him, on the part of bis son; and from that circumstance, it may be presumed that neither party was particularly attentive, as to the manner in which the note was worded. But be that as it may, the appellee has not attempted to take any advantage of the appellant, from the notes calling for dollars instead of bank notes. Had it been drawn, as the appellant says it should have been, he might have been compelled to pay the amount in Commonwealth’s bank notes, with interest; for he does not deny, indeed he acknowledges, that by the contract, sis verbally made, he was bound to pay interest.— *37 The judgment was not and could not be regularly entered for bank notes; but it was for the proper amount, with an endorsement that banknotes would be received in discharge of it; an endorsement made evidently, with the intent of exacting nothing more than justice; and no attempt has heem made to depart from that determination. This view of the case, is satisfactory to shew, that the ground of usury cannot be supported. The appellant does not even allege that the appellee required, or that he consented to pay an usurious interest on the sum lent. He only insists that to exact more than the value of the bank notes with interest, would be usurious; a conclusion entirely unwarranted, if even a contract could be deemed usurious, by matter subsequent to its creation, which was not so originally; a position which cannot be admitted, for he acknowledges that lie received bank paper, anti was by contract bound to return it with interest. He has, therefore, no right to complain, as nothing more lias been demanded of him. It would be unjust and absurd to convict the appellee of usury, merely because the note was taken for dollars; when it is clear, that neither party understood that any usury was to be paid, and when none has been claimed.
On contract to pay Commonwealth’s paper anil interest thereon, it is not usury to exact the Commonwealth’s paper and interest notwithstanding the paper has appreciated since date of the contract.
Chancellor will nolsel oP: unconnected demands, unless there oxistextrnneous circumstances which render it equitable to do so.
Rule of chancery practice, mother to permit several complainants to demand, by one bill, several mu'tors perfectly distinct and unconnected, against one defendant, nor one complainant to demand several mailers ofdistmci na tures nvaiost several defendants.
*37 - The only relief that he could, claim, according to the principles of equity, is a speciiic execution of the contract. But that he is endeavoring to avoid; and the chancellor cannot aid him in such an attempt. See the case of Taylor’s administrators vs. Reed, V. Monroe, 36.
As to the claim for the price of the slaves sold, as exhibited in the amended bill, we shall not enter into an investigation of it, as it is improperly combined with the matters of the original bill. Between it and the consideration of the note, there is not the slightest connection; and no extraneous circumstance is relied on, which can authorize the court to entertain jurisdiction of it, on the ground of set oil; and if, on that ground, it cannot be sustained, there is no other. Confusion should be avoided in conducting chancery, as well as common law suits.
In the case of Richardson, &c. vs. McKinson, &c. Littell’s select cases, 322, it is laid down as a settled *38 rule, neither to permit several complainants to demand, by one bill, several matters, perfectly distinct and unconnected, against one defendant; nor one complainant to demand several matters of distinct natures, against several defendants. In Maddox’s Chan. II vol. 176, it is said, “a bill containing things of distinct natures, brought against two or more persons, is demurrable;” in support of which, I Atk., 148, is cited. Again in same author, 293, “If a bill be brought concerning things of distinct natures, against several persons, or against one, it is demurrable; but not if combination is charged, unless it be denied by the answer,” &c. A reason is assigned, that if the court were to allow a plaintiff to demand-by one bill, several matters of different natures, against several defendants, it would tend to load each defendant with unnecessary burthen of costs, by swelling the pleadings with the state of the several claims of the other defendants, with which he has no connexion. This is certainly one, but not the only reason; to prevent confusion, and preserve simplicity in the pleadings, must be regarded as a matter of importance; and should, in no case, be unnecessarily overlooked. But it was erroneous to dismiss the amended bill absolutely, as that might be a bar to a prosecution of the claim, in another suit, in which it may lie investigated on its merits. The decree as to that, must he reversed.
Owsley and Anderson ior appellant; Mills and Brown for appellees.
Absent, Chief Justice Robertson.
The decree dismissing the original bill is correct, and mnst be affirmed.